Taxes. Mr. Stillman. Good morning, Your Honor. Good morning. May it please the Court, Philip Stillman, Flynn and Stillman for the appellate. Your Honor, first I'll really briefly address the issue of Wallace, which of course the Supreme Court came down with post-taste last week, I guess. I think the import of Wallace is certainly that a false arrest claim begins to accrue at the time of the arrest. I can't reconcile it with this Court's opinion in Harvey v. Waldron, which is a 210 F. 3rd, 1008, 2000 case, which of course is —  I believe that the Ninth Circuit in its infinite wisdom should prevail on that claim. But honestly, Your Honor, I understand it directly contradicts that, and I assume that the — that Wallace overrules Harvey. And for that purpose, I think that Ms. Braunstein certainly concedes that in terms of a false arrest claim, that does begin to accrue as of the Supreme Court's decision, fractured, though that decision may be, at the time of the false arrest and so on. So I think that that's a dead claim at this point. But to the real issue, I think, in this case is the — is the issue when the statute of limitations begins to run in the malicious prosecution case. Of course, Wallace only applies to false imprisonment — excuse me, false arrest claims. It does not apply to malicious prosecution. And in fact, the Supreme Court takes great pains to say that the review and the opinion is limited to the issue of false arrest. I think the — the case here on — on — on the statute of limitations is actually fairly simple. I — I think — and I think Mr. Braunstein should prevail on this. First of all, I think the issue is fairly straightforward in the sense that the — the statute of limitations only begins to accrue under Arizona law when all elements of the claim are in — in place. And — and none of the claims — none of the elements of the claim were in place until after the Ninth Circuit ruled in U.S. v. Braunstein that the case was frivolous. The reason that — Well, that — that can't literally be the case. Your client's case isn't the Ninth Circuit's ruling. Your client's case is malicious prosecution. Malicious prosecution didn't occur when the Ninth Circuit rendered its decision. Well, that's correct, Your Honor. So what you're talking about is not — let's go back and — and focus exactly on what you said. When did the elements accrue? When were all the elements in place? Well, here's the — here's the issue — here's the nub of the issue as I see it from that perspective. The case was clearly dismissed without prejudice by the — on the government's motion on May 4, 1999. That is — that is without question. However, the government has taken the position at that time, at the time of the dismissal, that it — that the dismissal did not establish — that the evidence at the time in the government's possession did not establish lack of fraud. In fact, the government, in arguing the motion for the Hyde Amendment fees, which was — which was filed a couple of months after, a month — literally 30 days after the — the dismissal without prejudice, government argued that that was not even a favorable termination on the merits for the purpose of the Hyde Amendment, which I think was directly contrary to law in the Gilbert case. And the government said that it did not establish that there was a favorable — that there was innocence, factual innocence. It simply said that at that time they were free to re-indict based on new evidence within the statute of limitations. Let me stop you right there and ask you this question. If they had, in fact, re-indicted and the same series of events occurred, wouldn't any malicious prosecution relate to that second indictment? I don't know the answer to that, Your Honor. I would — I would have — my gut — my gut instinct would be that if he were — that there would be two separate prosecutions. The — one would be the first prosecution. One would be if he was re-indicted. So I — I don't know how to answer that question. My gut feeling is that it would be pretentious. Let's say at best you have two counts of malicious prosecution, one aimed at the first indictment, the other one addressed to the second indictment. But doesn't the fact that you would have to do that flowing logically from our case law mean that — that your argument that you can wait five years until you're completely out of jeopardy, doesn't that wash that away? Well, there's really two — there's really two sides to that argument. And I disagree respectfully that that — that that does wash it away because there's only two — there's two ways to go. One is to determine whether the dismissal without prejudice established factual innocence on the favorable termination element of the claim. That is a factual — that is a factual issue incapable of resolution on a motion to dismiss. The — so — But the statute of limitations and tolling or the termination when a claim accrues, it's when the claim accrues, not when a party can prove or — or successfully demonstrate in court whatever it needs to prove to win a case. Well, there's — there's a yes and no answer to that, Your Honor. First of all, the — we're talking about when, in this particular situation, there is a favorable termination on the merits and when probable cause can be established. And the reason I bring the second element in is because the — the issue in terms of accrual overlap. In the favorable termination element, it requires factual innocence. And as I cited in our — in our brief, there are a number of cases that — that stand for the proposition that a — a dismissal without prejudice may or may not establish factual innocence of the charges. And in those cases where it's a dismissal with the prosecution saying, we can't prove the case. Well, a null pro — null prosecuting, a null pros, is — is very commonly that type of a — of a — of a ruling. That for whatever reason, the — the prosecution has decided for — maybe they're — maybe they don't — excuse me — maybe they don't like the way the evidence is shaping up. Maybe they are concerned, as in this case, that — that there's a reasonable doubt standard of proof that they can't meet, beyond reasonable — excuse me — or for any number of reasons. The — the question of whether that is — rises to the level of — whether a null pros — rises to the level of fact — of a favorable termination under merits for the purposes of a malicious prosecution case is — is inherently a factual issue, unless the — I guess I could conceive of a — of a way it wouldn't be. But this — that's not our case here. Our case here is, granted, the government says, as the case develops right now, we have — we have problems with our proof. But they also — they also say the government says, in its motion to dismiss, does not establish factual innocence — I mean — excuse me — does not establish absence of fraud. Then in their — in the government's argument, in response to our motion for attorney's fees under the Hyde Amendment, the government actually lays out the fact that they claim that it's not a favorable termination under merits. And the reason I bring the — the second issue up of probable cause is you have a period of time from the — from the dismissal, which may or may not be a favorable termination under merits. My argument is that it is not. And then you get to Judge Strand's — of course, there's the motion, the post-trial motion for attorney's fees. Then you get to Judge Strand's decision on the Hyde Amendment motion in October of 2000. In that — in that ruling, Judge Strand says, as a finding, A, it is — as the case was not frivolous as it developed and not contrary to established law on fraud, and B, was substantially justified. So as of October 2000, that finding negates any possibility that Mr. Bronstein could show the second element of a malicious prosecution case, that of — lacking probable cause. It is factually impossible, while that ruling is pending, to establish that there was a lack of probable cause when you have a finding from the Federal judge saying, A, it was substantially justified and, B, was not frivolous, which is a standard for public prosecution. General proposition, the fact that you can't prove something doesn't toll the statute of limitations. Well — You can have a context where you've got an adverse decision, civil decision of some kind, that has issue-preclusion effects, and you're stymied until you do something about that. Any authority that says that tolls the statute of limitations? Well, it's precisely for that reason, Your Honor, that there is, for example, in the AmFact case in Arizona, it's precisely for that reason that the statute does not begin to run until the resolution of post-trial motions which can affect the causes of action. So what you have here is a situation where, up until Judge Strand's ruling, there's a question about favorable termination on the merits element number one of a malicious prosecution case, and then, two, as of Judge Strand's ruling, there's — you've literally negated another element. So the only time you have — literally, you've negated. There is no such — you cannot establish, as a matter of law, that element. So Mr. Braunstein now has two problems with the elements of his claim. He doesn't have probable cause. He doesn't have favorable termination on the merits. Only when, A, statute of limitations runs out on the favorable termination on the merits, so he can't be re-indicted. Well, that's clear that he can't be re-indicted at that point. And B, this Court, the Ninth Circuit, has ruled that there is, in fact, no probable cause, that, in fact, Judge Strand's ruling that the case was not contrary to established law and fraud was wrong, and the case was, in fact, frivolous, i.e., no reasonable attorney could think that there was a claim. It was totally and completely without merit. The same kind of test established by the Ninth Circuit and State Court for Melissa's prosecution of lack of probable cause. Sotomayor, is there anything to prevent your client from filing this action at, before or shortly after the Strand ruling, and then moving to stay it pending the Ninth Circuit resolution of the Hyde claim? Well, in a technical way, obviously, and I've referred to the ---- Correct. I mean, there's no physical impediment against him filing right after. Lawyers file protective actions all the time to prevent statute of limitations from running. Or for any various reasons, various number of reasons. So he could have filed this malicious prosecution action and asked the district court, might have even been assigned to Judge Strand off the random wheel, to stay the action pending a determination of the Hyde claim by the Ninth Circuit, right? Well, I think that it's in a, as I said, in a physical impedimentary way. There's no reason why it couldn't have been filed. The problem, I think, becomes almost one of Rule 11 at that point, because you cannot say in good faith, first, that there is, that there's probable cause when Judge Strand's found there isn't. You cannot say that there's a favorable termination on the merits, although Judge Strand didn't really talk about that issue in the context of malicious prosecution, talked about a favorable termination on the merits in terms of the Hyde amendment, which is a different standard. So I think that while it is possible to have filed and then filed a motion to stay that pending a ruling in the Ninth Circuit, I think that that's not a, that's not a, shouldn't be a requirement, and it shouldn't be a practical requirement either, because if you take a look at the case law in Arizona, and I think in other areas relating to malicious prosecution, there's a concern about having to file things protectively when there are, when the issues are going to be resolved on appeal that would affect that issue. And a better rule is not to clog the courts with protective filings and then motions for stay while the Ninth Circuit rules, and as you know, that takes time. I mean, the Ninth Circuit rarely decides a case, I think, other than an emergency in less than a year. So what you end up, by adopting a rule requiring protective filings when the statute may not have run at all, and there are these other issues which we've already discussed, you end up requiring more effort in the courts, more filings in the courtroom that are, that may or may not even be necessary. A better rule, and the rule I think that's recognized in Arizona, and it is to wait until post-trial motions are resolved through appeal to determine whether or not such filing is necessary. That has two admirable effects from a public policy standpoint. One, you have, all the work may already be done, it's almost like why do we not allow most interlocutory appeals, because most things get resolved prior to reaching your court. And the second admirable public policy reason for not requiring those types of protective filings is simply the load on the court and the clerk's office. There's no reason to have to file more cases and encourage more filings in a very busy circuit when these issues will be resolved on appeal. You're down to about 20 seconds. I would like to reserve that 20 seconds. Thank you, Your Honor. Mr. Johnson. Good morning, Your Honors. My name is Michael Johnson with the U.S. Attorney's Office in Denver. The issue before this Court is the malicious prosecution claim. The other claims that were brought in the First Amendment complaint are time-barred, and Mr. Bronstein seems to agree with that, that the false arrest claim is gone. The intentional infliction of emotional distress and negligent inflection claims are gone. The unconstitutional seizure claim is gone. The only issue here is, does Mr. Bronstein have a malicious prosecution claim, and when did that claim accrue? We submit that the Ninth Circuit's decision from February 25, 2002, didn't cause the malicious prosecution claim to accrue. It's possible that the claim accrued on two different occasions, on May 1999, when the district court dismissed without prosecution, or rather dismissed without prejudice the criminal prosecution. Alternatively, the claim accrued when the statute of limitations expired five years later. I take it, and correct me if I'm wrong, that even if you told the entire period of the Hyde appeal, that that there's still a statute problem? Yes. Judge Neil Wake made that finding in his decision, which is now under review by this Court, that even if there was tolling, the period of time between October 2000, when Judge Strand issued his decision, and February 2002, when this Court issued its decision, even if that period is tolled, the two years' statute of limitations has already expired. What's the position of the United States vis-a-vis the issue of whether or not a dismissal without prejudice constitutes a favorable termination on the merits for the purposes of the elements of malicious prosecution? There are several cases that suggest how to approach a motion to dismiss without prejudice. In Harvey v. Waldron, the student that do you have a position? Yes. The position is, is that if the potential for conviction no longer appears to exist, then the that constitutes a favorable termination. The government So how does that implicate the dismissal without prejudice? The government indicated in its motion to dismiss without prejudice that it stated, it does not appear that the government can sustain its burden of proof beyond a reasonable doubt. That's stated in the motion to dismiss. The government also stated in the motion to dismiss, quote, therefore, there is no The Supreme Court of Arizona's case, Frey v. Stoneman, says that if the matter had been pursued and it would have resulted in a decision for the defendant, then that suggests that the motion to dismiss, the indictment, was a favorable determination for the defendant. Here, the standard is not simply whether the motion to dismiss demonstrates the factual innocence of the defendant. Rather, because if the case had been pursued at that time, the government admitted in its motion to dismiss that it would have essentially resulted in a decision in favor of Mr. Bronstein. At that point, that constituted a favorable determination on the merits of the criminal prosecution. Why wouldn't a bright-line rule be a lot better? I mean, we shouldn't have to guess on the statute of limitations, accrue, or look to the nuances of what you say in your papers, should we? I mean, it either ought to accrue then or not. But you don't think so. You think you have to have, essentially, an evidentiary hearing and have to determine what kind of language was used without any connection, without prejudice? No. There was no need for an evidentiary hearing. And we're not saying that there was a need to examine closely what occurred. But I think what you're saying is if you hadn't included that statement in your motion, that this would not have accrued. True? If there had been no statement whatsoever by the government in the motion to dismiss the indictment, no statement whatsoever, there are some cases, and we cited some cases in our brief, to suggest that a motion to dismiss without prejudice may also constitute a favorable determination on the merits. We cited the case from the Fifth Circuit. Let me ask you what your position was. I've read the cases, but you don't seem to be taking a position one way or the other on whether a — maybe I'm misinterpreting your position of whether or not it accrues upon a dismissal without prejudice. We did cite cases in our brief indicating that it does accrue at that point in time. But the facts here are even more strongly in the government's favor to show that it accrued at that point in time. And the facts here show that the government conceded in its motion to dismiss that it didn't have the facts, it didn't have the evidence to reasonably result in a conviction. And under those circumstances here, that was a favorable determination on the merits for purposes of a malicious prosecution claim. The — the Hyde Amendment motion we submit is — is not relevant for purposes of determining whether or not the cause of action accrued at some point after May of 1999. The Hyde Amendment motion was a collateral proceeding simply to address the request for fees. There was no discovery done in the Hyde Amendment motion litigation. All the facts were known to Mr. Bronstein as of May 1999, when the criminal prosecution against him was dismissed. He knew all of those facts at that time, and he knew at that time that he was injured. In fact, his counsel submitted a 22-page letter to the U.S. Attorney's Office in September of 1997 explaining in great detail why the case should be dismissed. He had been aware for years that there was no basis — that in his opinion, there was — there was no basis to go forward with the case. If Mr. Bronstein had filed prior to Judge Strand's ruling on the Hyde claim, and then Judge Strand had ruled in the way he did, wouldn't the government have moved to dismiss? Well, the government had tried that in two other cases that we cited in our brief, the Riverdale-Mills case and also the — the Hamilton v. Collette case. And in both of those cases, not from the circuit, both of those cases, the Court said that — that the decision on the Hyde Amendment motion didn't have any issue-preclusive effect. There was no collateral estoppel effect to those decisions because the Hyde Amendment issue concerns vexatiousness, and for purposes of a malicious prosecution claim, the issue is probable cause. When Judge Strand issued his decision in October of 2000, he never addressed the concept of probable cause. It doesn't appear in his opinion. The decision that came out from this Court on this issue was issued after Judge Strand's decision. It was a subsequent decision. There was no — That's normally true when someone appeals from district court to the court of appeals. So your position is that — that in terms of the ability of Bronstein as a plaintiff to file the action that we're concerned with here today, that all of the elements were present for the purpose of filing a complaint immediately after the dismissal without prejudice? All the elements were present there. And that the Hyde Act action had no impact up, down, or sideways on that? It's a — the Hyde Amendment litigation was — was collateral. What — essentially, what Mr. Bronstein is suggesting is that there should be some kind of a — a meta-process here where there's litigation on the Hyde Amendment motion for fees, and then once that's resolved, then there can be a subsequent litigation on a claim for malicious prosecution. That's — that was not the intent of the Hyde Amendment. There's no indication from the legislative history that that was the intent in — in Henry Hyde's discussions on the House — in the House. The — the Hyde Amendment  not pertinent in that respect, it — Judge Scalia — Justice Scalia, in the Wallace v. Cato case, suggested that, in fact, under circumstances not dissimilar from this case, that the plaintiff — a criminal defendant should file a civil action and then ask that the action be stayed. And Justice Scalia did, on behalf of the majority, did address the — the argument from the other side that asking for a criminal action, suggesting that a case be filed and that then a stay be requested, would clog the courts. And the majority in Wallace said that, in fact, Federal officials are in favor of having cases filed at an earlier point in time because of the interest in determining whether they — whether there has been alleged improper action and also an opportunity to resolve the suit in a — in a reasonable time frame. So in Wallace, the Court did — did, in fact, indicate that — that filing an action early and asking for a stay is — is the favorable course of action. What Mr. Bronstein could have done in this case, if there was a question at all as to whether or not the May 1999 decision was a favorable termination, he could have moved the district court to enter a dismissal with prejudice. He could have opposed the government's motion to dismiss without prejudice and argued that it should be dismissed with prejudice. He didn't do either of those things. That would have — that would have been the opportunity for him to obtain the finality that he needs so that he could, if there was a question as to whether or not he could go forward with the malicious prosecution claim. But he — he didn't take either of those steps. I'm not sure that I understand how that helps you, because that suggests there's still an open question as to whether there's been a favorable termination as of that point. Well, if there hasn't been a favorable termination at that point, there — there was certainly a favorable — a favorable termination when the statute of limitations expired in the case. And as we set forth in our brief, at that point in time was August of 2001, and the statute of limitations expired. And so nothing that occurred at that — from that two-year period onward suggests that the case was timely filed here. Very briefly, Your Honor, they — we addressed in our papers the issue of res judicata and also the issue of collateral estoppel. Judge Strand's — or rather, Judge Wake's decision on those two issues, we believe, is fully supported in the record. And even if — even if the case had been filed sometime prior to the time it was filed, it had to have been filed at least as of August of 2003, and it wasn't filed until the statute had expired. The final argument that I have, Your Honor, is that the Hyde Amendment case essentially is — is different. It's not — it's not the same issue that we have — that is before this Court as to the malicious prosecution claim. Inserting the Hyde Amendment into these types of proceedings is not the same issue as the Hyde Amendment. It is contrary to congressional intent. The purpose of the Hyde Amendment was not essentially to assist a criminal defendant in a malicious prosecution claim. The remedy in the Hyde Amendment is attorney's fees. There's no indication that the Hyde Amendment was designed or intended to assist litigation on a malicious prosecution claim. Unless the Court has further questions, we would respectfully request that the decision of Judge Wake from the district court be affirmed. Thank you. Thank you for your argument, counsel. Thank you. Rebuttal? Twenty seconds. Can I have some of Mr. Johnson's timeline? Your Honor, two points. First of all, the Frey case, ironically enough, was — the Frey case was a favorable case, whether it was a favorable termination on the merits or not. So I think given the context that we're in here, the motion to dismiss, I think that takes care of that issue, even if — even if it were to go that direction. Second is the point that Mr. Johnson made about going — about the statute of limitations running in August of 2001, five years after the last act. The case was already on appeal at that point. And the — Judge Strand's ruling on the lack of frivolous — that the case wasn't frivolous and that it was substantially justified negated the probable cause element. So that even if the statute of limitations ran on filing new charges as of August 2001, cases are already on appeal here, and there was no — and there was no probable cause element left. So on either of those cases, the statute of limitations should begin to run at the very earliest when this Court made its decision on February 25th, establishing all elements, i.e., favorable termination, lack of probable cause, and, of course, malice can be inferred from lack of probable cause. Okay. Thank you very much, Your Honor. Thank you both for coming down today. The case just argued will be submitted for decision. And we'll turn to the last case on the argument calendar this morning, which is the Pyramid Lake Paiute v. Vass. Thank you.
judges: Hawkins, Thomas, Clifton